1  DAVID H. KRAMER, State Bar No. 168452
   CHARLES T. GRAVES, State Bar No. 197923
2  RIANA S. PFEFFERKORN, State Bar No. 266817
   WILSON SONSINI GOODRICH & ROSATI
3  Professional Corporation
   650 Page Mill Road
4  Palo Alto, CA 94304-1050
   Telephone: (650) 493-9300
5  Facsimile: (650) 565-5100
   Email: dkramer@wsgr.com
6
   Attorneys for Plaintiff
7  Twitter, Inc.

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                        SAN FRANCISCO DIVISION

12 | TWITTER, INC., a Delaware corporation, | CASE NO.: 3:12-CV-1721 LB |
|---|---|
13 | Plaintiff, | PLAINTIFF TWITTER, INC.'S OPPOSITION TO DEFENDANT |
14 | v. | GARLAND E. HARRIS'S MOTION TO DISMISS PLAINTIFF'S |
15 | SKOOTLE CORP., a Tennessee corporation; JL4 WEB SOLUTIONS, a Philippines corporation; | COMPLAINT |
16 | JUSTIN CLARK, an individual, d/b/a TWEETBUDDY.COM; JAMES KESTER, an | Hearing Date: TBD<br>Time: TBD |
17 | individual; JAYSON YANUARIA, an individual; JAMES LUCERO, an individual; and | Before: TBD |
18 | GARLAND E. HARRIS, an individual, | |
19 | Defendants. | |

## INTRODUCTION

Plaintiff Twitter, Inc. ("Twitter" or "Plaintiff") filed the instant action against Defendant Garland E. Harris ("Harris" or "Defendant") on April 5, 2012, alleging claims for breach of contract,[1] fraud, and unfair or deceptive business practices under state and common law. (ECF No. 1). Harris, proceeding *pro se*, moved to dismiss Twitter's Complaint on May 11, 2012.[2] (ECF No. 23). Harris's motion raises a number of specious arguments in opposition to the Complaint, primarily directed to supposed procedural defects, yet remains conspicuously silent as to the merits of Plaintiff's claims about Harris's unlawful and fraudulent conduct. Because all of Defendant's challenges to the Complaint must fail, as further explained below, Plaintiff respectfully requests that the court deny Defendant's motion to dismiss the Complaint.

## ARGUMENT

### I. The Court Has Subject Matter Jurisdiction over Plaintiff's Claims Against Harris

Defendant argues that the court lacks subject matter jurisdiction over Twitter's claims against him for various reasons, all of which are unavailing.

#### A. Legal Standard

Dismissal under Federal Rule of Civil Procedure 12(b)(1) is appropriate when the district court lacks subject matter jurisdiction over the claim. FED. R. CIV. P. 12(b)(1). A Rule 12(b)(1) attack may be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted). A facial challenge goes to the sufficiency of the pleadings to show jurisdiction, whereas a factual attack alleges that no jurisdiction exists despite the formal sufficiency of the

---

[1] Twitter's user agreement, which comprises the Twitter Terms of Service ("Terms"), the Twitter Rules, and Twitter's Privacy Policy (collectively the "TOS"), is attached to the Complaint as Exhibit A. (*See* ECF No. 1, ¶ 26 & Ex. A). Plaintiff notes that it updated the TOS on May 17, 2012, and that the version of the TOS in effect when the Complaint was filed is now available at http://twitter.com/tos/previous/version_5 (last visited May 19, 2012).

[2] Defendant's deadline to respond to the Complaint pursuant to Federal Rule of Civil Procedure 12(a)(1)(A)(i) was May 3, 2012. (ECF No. 10). The certificate of service for the motion to dismiss states that the motion was served on May 10, 2012, making it untimely under Rule 12. (ECF No. 25). Prior to that date, Plaintiff filed a motion for entry of default against Harris, which has yet to be decided by the court. (ECF No. 16). Plaintiff hereby renews its motion for entry of default against Harris for failure to timely serve the motion to dismiss.

complaint. *Dragovich v. U.S. Dep't of the Treasury*, 764 F. Supp. 2d 1178, 1184 (N.D. Cal. 2011) (citations omitted). For facial attacks, the inquiry is confined to the allegations in the complaint. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). For factual attacks, the court need not presume the truthfulness of the plaintiff's allegations, and may properly look beyond the complaint without converting the motion to dismiss into one for summary judgment. *White*, 227 F.3d at 1242 (citations omitted).

### B. Plaintiff Has Sufficiently Alleged the Minimum Amount in Controversy

Defendant contends that Twitter has insufficiently alleged the requisite amount in controversy for this court to exercise subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a), solely because the Complaint alleges that Plaintiff spent "at least $75,000" just on anti-spam efforts to combat Defendant's wrongdoing.[3] (ECF No. 23, ¶ 1, ll. 3-12; *see* ECF No. 1, ¶ 25). However, the Complaint expressly alleges that the amount in controversy exceeds the jurisdictional threshold with respect to each defendant, including Harris. (ECF No. 1, ¶¶ 11, 62). Also, Defendant's cherry-picking ignores the other cognizable damages Plaintiff alleges, which count toward the total amount in controversy. Plaintiff alleges damages of at least $75,000 in anti-spam efforts alone, and on top of that, also alleges entitlement to other relief including but not limited to an injunction and exemplary and punitive damages, as more fully set forth in the prayer for relief. (ECF No. 1, ¶¶ 75, 80; p. 20, ll. 5-8). Therefore, it is facially evident from the Complaint that Plaintiff in good faith has alleged that more than $75,000 is in controversy. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 401-02 (9th Cir. 1996).

Moreover, even taken in isolation, the wording cited by Defendant is perfectly sufficient to meet the amount-in-controversy requirement. A party "is entitled to stay in federal court unless it is legally certain that less than $75,000 is at stake. If the amount is uncertain then there is potential controversy, which is to say that *at least* $75,000 is in controversy in the case."

---

[3] Defendant concedes he is domiciled in the State of Florida, *i.e.*, diverse from Plaintiff, and does not contest the court's jurisdiction on the basis of citizenship. (ECF No. 23, ¶ 3, ll. 15-16).

*McPhail v. Deere & Co.*, 529 F.3d 947, 954 (10th Cir. 2008) (emphasis added; citation and quotation omitted). *See also Andrews v. E.I. Du Pont de Nemours & Co.*, 447 F.3d 510, 514 (7th Cir. 2006) ("The question is whether the amount in controversy is *at least* $75,000 exclusive of costs and interest." (emphasis added)); *Johnson v. Myers*, No. 11-CV-00092 JF (PSG), 2011 WL 4533198, at *3 (N.D. Cal. Sept. 30, 2011) ("claims worth *at least* $75,000" (emphasis added)).

Since Twitter has sufficiently alleged the existence of diversity jurisdiction in this case, the court should likewise reject Defendant's argument that, as a traditionally state-law matter, contract claims should not "waste the valuable time of the United States Federal Court System." (ECF No. 23, ¶ 1, ll. 17-18). It is beyond question that this court has jurisdiction over purely state- and common-law civil actions properly brought in diversity, such as the instant case, *see* 28 U.S.C. § 1332(a)(1), and judicial economy is better served when the court does not have to "waste its valuable time" on frivolous arguments in the course of deciding such actions.

### C. The CAN-SPAM Act's Definition of Spam Is Irrelevant

Defendant next makes the equally spurious argument that the court lacks subject matter jurisdiction because Twitter's use of the term "spam" does not comport with the CAN-SPAM Act, 15 U.S.C. § 7701 *et seq.* (ECF No. 23, ¶ 1, ll. 20-24). Irrespective of whether it is jurisdictional, CAN-SPAM's definition of "spam" doubtless would be critical in the context of a CAN-SPAM case. *See N.B. Indus. v. Wells Fargo & Co.*, No. 10-CV-03203 LB, 2010 WL 4939970 (N.D. Cal. Nov. 30, 2010) (claims under federal Junk Fax Prevention Act dismissed where defendants' faxes did not fall under statutory definition of "advertisements"). However, the Complaint does not include a CAN-SPAM claim, so that statute is irrelevant here. Plaintiff defines the term "spam" to refer to Tweets on Twitter, not e-mail messages, in the Complaint, and proceeds from there as the basis for its claims against Defendant.[4] (ECF No. 1, ¶¶ 19-21). Defendant's subject-matter jurisdiction challenge to the Complaint therefore fails.

---

[4] Also, as alleged in the Complaint, Twitter defines "spam" in its TOS, which Plaintiff alleges Defendant agreed to and then violated through his conduct, so Defendant cannot colorably contend that he was not on notice of Twitter's definition of the word such that he should escape liability for his acts. (ECF No. 1, ¶¶ 26-31, 55-57).

1  **II.  The Court Has Personal Jurisdiction over Defendant Harris**

Next, Defendant contests the court's personal jurisdiction over him under Federal Rule of Civil Procedure 12(b)(2), thereby placing the burden on Plaintiff to show that jurisdiction is appropriate. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). As explained below, this court has personal jurisdiction over Defendant both because he consented to it and because, independent of his consent, the court has specific jurisdiction over him.

First, the Complaint alleges, and Defendant does not deny, that Defendant agreed to Twitter's TOS. (ECF Nos. 1, ¶¶ 26-31; 23, ¶¶ 1, 5). By agreeing to Plaintiff's TOS, Defendant consented to the TOS's "Controlling Law and Jurisdiction" clause, which provides, in pertinent part, "All claims, legal proceedings or litigation arising in connection with the Services will be brought solely in San Francisco County, California, and you consent to the jurisdiction of and venue in such courts and waive any objection as to inconvenient forum." (ECF No. 1, Exh. A, p. 28).[5] Forum selection clauses such as this are presumed to be valid, *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972), and a defendant's acceptance thereof shows consent to personal jurisdiction in the forum specified. *See SEC v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007). Indeed, in a case highly similar to the instant action, this court recently found that a defendant consented to its jurisdiction by agreeing to Terms of Use containing a forum selection clause employing similar language to Plaintiff's. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1052-53 (N.D. Cal. 2010). Defendant Harris has not disputed the enforceability of Plaintiff's forum selection clause, nor is there any reason why the court should not enforce it against him. *Id.* (citing *Zenger-Miller, Inc. v. Training Team, GmbH*, 757 F. Supp. 1062, 1069

---

[5] The TOS's "Controlling Law and Jurisdiction" clause provides, in pertinent part, "All claims, legal proceedings or litigation arising in connection with the Services will be brought solely in San Francisco County, California, and you consent to the jurisdiction of and venue in such courts and waive any objection as to inconvenient forum." (ECF No. 1, Ex. A, p. 28). *See also* Twitter Previous Terms of Service, Version 5, http://twitter.com/tos/previous/version_5 (last visited May 19, 2012). As noted *supra* n.1, this was the operative version of the TOS at the time the Complaint was filed. For the forum selection clause in the current version of the TOS, which likewise provides that a user agreeing to the TOS consents to the jurisdiction of this court, *see* http://twitter.com/tos.

(N.D. Cal. 1991)).  The court should therefore find that Defendant's agreement to Plaintiff's TOS constituted consent to personal jurisdiction in this court.

Separately, the court also has specific jurisdiction over Defendant under California's long-arm statute, which "is co-extensive with federal due process requirements." *Id.* at 1053 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004)); CAL CIV. PROC. CODE § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.").  Federal due process requires that a nonresident defendant have sufficient "minimum contacts" with the forum state "such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The minimum contacts inquiry in the Ninth Circuit is a three-part test: (1) defendant must have purposefully availed himself of the privilege of conducting activities in the forum state (here, California), for contract claims, or, for tort claims, must have purposefully directed his conduct toward California; (2) the claim must arise out of or relate to the defendant's forum-related acts; and (3) exercising jurisdiction must be reasonable. *Schwarzenegger*, 374 F.3d at 802-03; *Rano v. Sipa Press*, 987 F.2d 580, 588 (9th Cir. 1993) (citations omitted).

The first of these factors is the most critical. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir. 1997).  To satisfy the second factor, the plaintiff must show that its injury would not have occurred "but for" the defendant's forum-related conduct. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001).  Once a plaintiff has established the first two prongs, the burden shifts to the defendant to show unreasonableness under the third prong. *Schwarzenegger*, 374 F.3d at 802 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). *See also Pac. Atl. Trading Co. v. M/V Main Exp.*, 758 F.2d 1325, 1329-30 (9th Cir. 1985) (setting forth seven-factor reasonableness inquiry).

For contract claims, purposeful availment "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there.  By taking such actions, a defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Schwarzenegger*, 374

F.3d at 803 (citation and quotation marks omitted). Plaintiff's Complaint alleges that Defendant executed a contract with Twitter, which is California-based, by entering into the TOS, which is governed by California law, to use the service provided by Twitter from its principal place of business in California, then sent spam over that service in contravention of Defendant's contractual agreement with Plaintiff, thereby harming Plaintiff in California.[6] (ECF No. 1, ¶¶ 4, 12-13, 26-31, 55-57 & Exh. A, p. 28). Defendant thus purposefully availed himself of the privilege of conducting activities in California under the auspices of California law, and Plaintiff's contract claims against Defendant would not have arisen but for his California-related conduct.

For tort claims, purposeful direction is evaluated under the three-part "effects" test originating in *Calder v. Jones*, 465 U.S. 783 (1984): the defendant must allegedly have (1) committed an intentional act (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). A plaintiff's "showing that a defendant purposefully directed his conduct toward a forum state ... usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum." *Schwarzenegger*, 374 F.3d at 803 (citation omitted).

The Complaint alleges that Harris, who resides in Florida, intentionally used Twitter's service, provided from its California headquarters, to send spam to Plaintiff's users advertising his online auction and online payment websites. The Complaint bases its tort claims against Defendant on allegations that this conduct harmed Twitter in California by damaging users' goodwill toward Plaintiff and causing Plaintiff to lose users, and that Defendant also caused Plaintiff significant monetary harm in the form of costly anti-spam efforts which Twitter would not have incurred but for Defendant's conduct. The Complaint expressly alleges that Harris

---

[6] The TOS state, "These Services are operated and provided by Twitter Inc., 795 Folsom Street, Suite 600, San Francisco, CA 94107." (ECF No. 1, Ex. A, p. 28). Because he agreed to the TOS, Defendant was on notice of the fact that Twitter operates and provides its services from California.

repeatedly, knowingly, improperly, and purposefully directed his intentional activities toward California, thereby causing harm he knew was likely to be suffered by Twitter in California.[7] (ECF No. 1, ¶¶ 4, 9, 12-13, 25, 55-57). Plaintiff thus has demonstrated that Defendant's acts "were intentionally directed at Plaintiff, a company headquartered in the forum state, and the harm caused by Defendant[] was felt in California. As such, Plaintiff['s] claims arise out of Defendant['s] forum-related contacts because the harm to Plaintiff would not have occurred but for Defendants' actions." *Craigslist*, 694 F. Supp. 2d at 1054. *See also eBay Inc. v. Digital Point Solutions, Inc.*, 608 F. Supp. 2d 1156, 1162 (N.D. Cal. 2009) (personal jurisdiction existed "because of the multiple alleged contacts with [plaintiff's] computer system in this district" and because "[t]he alleged harm resulting from such contacts also occurred in this district").

Plaintiff having established the first two prongs of specific jurisdiction, the burden shifts to Defendant to show unreasonableness under the third prong. *Schwarzenegger*, 374 F.3d at 802 (citation omitted). Defendant does not meet this burden. His sole argument against the exercise of jurisdiction over him is the contention that he "has not conducted business in California for over 3yrs. [sic] which predates involvement with the Plaintiff," supported only by the statement in his affidavit that Plaintiff's allegation that he does business in California "is patently false."[8]

---

[7] As noted *supra* n.6, Harris was on notice that Twitter is located in California.

[8] Defendant's supporting declaration also alleges that it is "ludicrous" for Plaintiff to contend that "dealing with a website located on worldwide redundant servers constitutes doing business in California." (ECF No. 24, ¶ 6, ll. 7-9). This is a legal conclusion rather than a factual statement, so it is inappropriate to a sworn affidavit and should not be considered by the court. Furthermore, it is unclear what Defendant means by "worldwide redundant servers"; to the extent that Defendant is attempting to argue that Plaintiff's servers are not located in California, he has introduced no competent evidence thereof. "WHOIS records are maintained by domain name registrars that make domain name contact and ownership information searchable and available to the public." *Express Media Group, LLC v. Express Corp.*, No. 06-CV-03504 WHA, 2007 WL 1394163, at *1 (N.D. Cal. May 10, 2007). Defendant included only a truncated portion of the WHOIS record for Twitter.com in his declaration, namely, the portion showing that Twitter's domain name registrar is located in Australia. (ECF No. 24, ¶ 6, ll. 9-15). However, this shows nothing about Plaintiff. Plaintiff asks that the court take judicial notice of the fact that Twitter's servers are located in San Francisco, California, as shown by the full WHOIS record for Twitter.com, which lists a San Francisco, California address. *See Liberty Media Holdings, LLC v. Vinigay.com*, No. 11-CV-280-PHX-LOA, 2011 WL 7430062, at *5 n.10 (D. Ariz. Dec. 28, 2011) (report and recommendation taking judicial notice of location of plaintiff's Internet server and describing court's method for determining same), *adopted in full*, 2012 WL 641579 (D. Ariz. Feb. 28, 2012).

(ECF Nos. 23, ¶ 2, ll. 6-8; 24, ¶ 6, ll. 6-7). This is insufficient to controvert Plaintiff's arguments. Defendant admits that he has been "involved" with Twitter, without contesting Plaintiff's allegations that he used the Twitter service to spam Twitter's users. His denial that he has "conducted business in California" at most appears to be an argument directed toward general jurisdiction, which Plaintiff does not argue the court may exercise over Defendant, as it is an "exacting standard" that requires "continuous and systematic general business contacts" that "approximate physical presence" in the forum state. *Schwarzenegger*, 374 F.3d at 801 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); further citation omitted). However, the lack of general jurisdiction does not make the exercise of specific jurisdiction unreasonable. Because Defendant consented to this court's jurisdiction over him and has not demonstrated that it would be unreasonable to exercise specific jurisdiction over him independent of his consent, Defendant's motion to dismiss for lack of personal jurisdiction must be denied.

### III. This Court Is the Proper Venue and Forum for Plaintiff's Action

Next, Defendant conclusorily asserts pursuant to Federal Rule of Civil Procedure 12(b)(3) that venue in this district is improper. (ECF No. 23, ¶ 5, ll. 10-16). A civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).[9] As alleged in the Complaint, Plaintiff's principal place of business is San Francisco, and Defendant used Plaintiff's service to send spam Tweets, thereby harming Plaintiff in this district: Plaintiff has lost goodwill and users due to Harris's wrongdoing, and has expended considerable money and personnel resources in efforts to combat it. (ECF No. 1, ¶¶ 4, 12-13, 23, 25, 55-57). Because "some or all of the predicate acts underlying [Plaintiff's] claims are alleged to have occurred in this district," venue here is proper. *eBay Inc.*, 608 F. Supp. 2d at 1162 (plaintiffs sued defendants over software code that forced users' browsers to visit plaintiff's site, causing improper placement of a cookie that subsequently

---

[9] Previously 28 U.S.C. § 1391(a)(2).

caused eBay to pay defendants; court held that, were it not for enforceable Los Angeles-specific forum selection clause, venue would be proper in the Northern District of California).

Defendant invokes the doctrine of *forum non conveniens*, even though, as he himself notes, the doctrine is typically applied to cases involving events that occurred in a foreign country, unlike his alleged acts in this case. (ECF No. 23, ¶ 3, ll. 12-15). Under this doctrine, "a court may resist imposition upon its jurisdiction" even when venue is formally proper. *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011) (citations and quotation omitted). However, the doctrine is "an exceptional tool to be employed sparingly," so "a party moving to dismiss based on *forum non conveniens* bears the burden of showing (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." *Dole Food*, 303 F.3d at 1118 (citations and quotation marks omitted). Defendant has made no effort to meet this burden beyond citing the distance between his Florida domicile and this court. (ECF No. 23, ¶ 3, ll. 12-16). He points to no factors of private interest for the court to weigh in the balance against the "'strong presumption in favor of the plaintiff's choice of forum.'" *Carijano*, 643 F.3d at 1227 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 234, 255 (1981)). And tellingly, he has not moved for change of venue to a court closer to home. *See* 28 U.S.C. § 1404. In light of Defendant's conclusory argument, application of the extreme doctrine of *forum non conveniens* is uncalled-for here.

Finally, as discussed above with regard to personal jurisdiction, Defendant's agreement to the TOS constituted consent to the forum selection clause therein, which provides for this court as a proper forum. Defendant thereby consented to jurisdiction and venue in this court while waiving any objection as to inconvenient forum. (ECF No. 1, Exh. A, p. 28).[10] Defendant therefore may not contest the instant action on grounds of improper forum or venue, and his motion to dismiss should be denied on these grounds.

---

[10] *See also* Twitter Previous Terms of Service, Version 5, http://twitter.com/tos/previous/version_5 (last visited May 19, 2012). As noted *supra* n.1, this was the operative version of the TOS at the time the Complaint was filed. For the forum selection clause in the current version of the TOS, which likewise provides for this court as a proper forum, *see* http://twitter.com/tos.

PLAINTIFF TWITTER, INC.'S OPPOSITION TO
DEFENDANT GARLAND E. HARRIS'S
MOTION TO DISMISS
-9-
CASE NO. 3:12-CV-1721 LB

1  **IV.  Plaintiff Properly Served Process on Defendant Harris**

Next, pursuant to Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5), Defendant asserts that process and service of process on him were deficient.  (ECF No. 23, ¶ 4). Defendant's allegation that the summons issued as to him does not bear the court's seal, as required by Federal Rule of Civil Procedure 4(a)(1)(G) (*id.*), is unavailing given that the court's seal is visible in the summons.  (ECF No. 3, p. 2).  Defendant does not otherwise challenge the form of process.  Accordingly, dismissal under Rule 12(b)(4) is unwarranted.

Defendant also challenges sufficiency of service under Rule 12(b)(5), putting the burden on Plaintiff to show that service was valid under Federal Rule of Civil Procedure 4.  *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).  "A signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence."  *SEC v. Internet Solutions for Bus. Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007) (citation and quotation marks omitted).  Plaintiff filed the return of service on Harris, executed by Plaintiff's process server under penalty of perjury, representing that the server is at least 18 years of age and not a party to this action, and that Defendant was personally served with the summons, a copy of the Complaint, and other documents on April 12, 2012.[11]  (ECF No. 10).  In response, Defendant's supporting declaration asserts only that service was "improper."  (ECF No. 24, ¶ 10, ll. 7-8). This conclusory denial does not meet Defendant's burden for rebutting the presumption of proper service.  *Freeman v. ABC Legal Servs. Inc.*, No. 11-CV-3007 EMC, 2011 WL 6090699, at *8 (N.D. Cal. Nov. 10, 2011) (citations omitted).  Since Defendant has produced no facts to controvert Plaintiff's evidence of valid service, Defendant's motion should be denied on this ground.

**V.  Plaintiff Has Sufficiently Stated a Claim for Breach of Contract**

Finally, Defendant moves to dismiss Plaintiff's breach of contract claim for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

---

[11] The return of service also states that service was effected pursuant to California service rules.  (ECF No. 10, p. 1).  Plaintiff has thus made a *prima facie* showing that service was proper under both Rule 4(e)(1) and 4(e)(2).  FED. R. CIV. P. 4(e)(1)-(2).

(ECF No. 23, ¶ 5).[12] A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In evaluating the motion, a court must consider whether, taking all of the plaintiff's allegations as true, the complaint alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550, 570 (2007); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996) (complaint's allegations must be taken as true). "The plaintiff's complaint need not contain detailed factual allegations, but it must contain more than a 'formulaic recitation of the elements of a cause of action.'" *Briosos v. Wells Fargo Bank*, 737 F. Supp. 2d 1018, 1022 (N.D. Cal. 2010) (quoting *Twombly*, 550 U.S. at 555). In evaluating the motion, the court may consider documents attached to or incorporated by reference into the complaint, as well as matters properly subject to judicial notice. *Id.* (citing *Parks School of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

Defendant's only argument is that Twitter's TOS limit its remedy for a user's breach of contract to permanent suspension of the breaching user's account. Defendant argues that Plaintiff has already terminated his account and has therefore exhausted its remedies against him. (ECF Nos. 23, ¶ 5, ll. 7-16; 24, ¶ 3). It is unclear which account Defendant is referring to, out of the many tens of thousands the Complaint alleges he has created to promote his spamming activities (ECF No. 1, ¶ 56), but that detail is irrelevant regardless. While the TOS indeed provide that Twitter may terminate a user's account for TOS violations, they do not constrain Twitter to the sole remedy of account termination. Rather, the TOS provide that California law

---

[12] Defendant erroneously cites to Rule 12(b)(5). (ECF No. 23, ¶ 5, l. 5). However, it is clear from the context that Defendant meant to cite subsection (6), and Plaintiff has already addressed Defendant's actual Rule 12(b)(5) argument, regarding insufficient service of process, *supra*.

governs the TOS "and any action related thereto." (*Id.*, p. 28). And California law allows money damages for breach of contract:

> For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.

CAL. CIV. CODE § 3300. The Complaint accordingly seeks money damages against Harris for his material breaches of the TOS. (ECF No. 1, ¶ 62). Seeking such a remedy for breach of the TOS is as much Plaintiff's right as the account termination right it has already exercised. Defendant does not otherwise contest the sufficiency of Plaintiff's breach of contract allegations. Therefore, Defendant's motion to dismiss that claim should be denied.

Finally, it bears noting that Defendant's motion challenges only Plaintiff's breach of contract claim, without mentioning Plaintiff's two other claims against Harris. (ECF No. 23, ¶ 5). Accordingly, even if the court were to find Defendant's Rule 12(b)(6) argument persuasive as to the breach of contract claim, dismissal of the other two causes of action against Harris (for fraud and unlawful and/or fraudulent business practices) would be unwarranted.

## **CONCLUSION**

For the reasons stated above, Plaintiff respectfully requests that this court deny Defendant's motion to dismiss the Complaint against him.

Dated: May 25, 2012

Respectfully submitted,

*/s Charles T. Graves*
David H. Kramer
Charles T. Graves
Riana S. Pfefferkorn
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dkramer@wsgr.com
Email: tgraves@wsgr.com
Email: rpfefferkorn@wsgr.com

***Attorneys for Plaintiff Twitter, Inc.***