IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWITTER, INC., | No. C 12-1721 SI |
| Plaintiff, | **ORDER DENYING MOTION TO DISMISS** |
| v. | |
| SKOOTLE CORP., JL4 WEB SOLUTIONS, JAMES KESTER, JAYSON YANUARIA, JAMES LUCERO, and GARLAND E. HARRIS, | |
| Defendants. | |

This matter concerns an action for breach of contract, tortious interference with contract, fraud, and unfair or deceptive business practices, initiated by plaintiff Twitter, Inc. ("Twitter") in connection with violations of its Terms of Service and various "spam" activities alleged against defendants Skootle Corp., JL4 Web Solutions, James Kester, Jayson Yanuaria, James Lucero, and Garland E. Harris (collectively, "Defendants").[1] The Motion to Dismiss is brought by Garland E. Harris, acting *pro se*, asserting lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), improper venue pursuant to Fed. R. Civ. P. 12(b)(3), insufficiency of process and service of process pursuant to Fed. R. Civ. P. 12(b)(4) and 12(b)(5), and

---

[1] Defendant Justin Clark has been dismissed from the case. The tortious interference with contract claim is not asserted against defendant Garland E. Harris.

failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).[2] Twitter opposed the motion on May 25, 2012. Harris has not filed a reply. The motion to dismiss is currently scheduled for hearing on June 29, 2012. Pursuant to Civil Local Rule 7-1(b), the Court finds this motion appropriate for resolution without oral argument and hereby VACATES the hearing. Having considered the papers submitted, and for good cause shown, the Court hereby DENIES the motion to dismiss.

## BACKGROUND

Plaintiff Twitter is a corporation incorporated in Delaware with its principal place of business in San Francisco, California. Comp. ¶ 4 (Dkt. 1). Twitter operates an online communication platform with over 140 million users worldwide. *Id.* ¶ 1. Twitter's eponymous service ("Twitter service") allows users to send and receive information instantaneously through short messages called "Tweets," which are limited to 140 characters. *Id.* ¶ 14. These messages may be sent via a cell phone or via Twitter's website. Each user's account is identified by a unique username, together with the @ symbol, from which the user is able to broadcast messages to his or her public page or to other users directly. Users may choose to "follow" a particular account by subscribing to receive all the messages from that account. For example, @whitehouse can broadcast messages on its public Twitter page (searchable by username from the main Twitter site) or directly to any account that has chosen to follow it. *Id.* ¶ 15. Twitter users can also cause Tweets to be automatically delivered to specific users by mentioning that username with the "@" symbol in the message. *Id.* ¶ 16. In addition, Twitter users may send private, direct messages to each other. Twitter service is widely used for monitoring current trends and developing news stories, which is facilitated by the use of keywords with the "#" symbol ("hashtag" in Twitter parlance). Twitter's algorithms monitor currently popular keywords by nation and city, which

---

[2] Twitter contends that the motion to dismiss was untimely because Harris submitted a responsive pleading seven days after the 21-day period provided by Rule 12(a), and renews its motion for entry of default against Harris. However, default judgments "are generally disfavored; whenever it is reasonably possible, cases should be decided on their merits." *Schwab v. Bullock's Inc.*, 508 F.2d 353, 355 (9th Cir. 1974). A court may also deny an entry of default when a motion to dismiss has been filed shortly after the deadline but the plaintiff has not been prejudiced and "exceptional circumstances that would justify entry of a default judgment are not present." *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1317 (11th Cir. 2002). As such, the Court will address the motion to dismiss on its merits despite the delay in its filing.

2

are referred to as "trending topics." *Id.* ¶ 17. Businesses and organizations also use the Twitter service to communicate with customers and interested individuals.

The Twitter service is free of charge and Twitter users agree to a limited, non-assignable license to use the Twitter services, subject to the Terms of Service ("TOS") (included with the complaint as Exhibit A). This agreement includes Twitter Rules that prohibit fraudulent and deceptive practices and Twitter's Privacy Policy. *Id.* ¶ 26 . Twitter service functions may be subject to prohibited behaviors that Twitter refers to collectively as "spam." Such behaviors include sending links to harmful websites, false or misleading advertisements, posting unwanted messages to users through the abuse of the "@" function, and abusing the "#" function to take advantage of popular keywords. *Id.* ¶ 19-20. These actions may be automated through use of "spambots" or "bots." *Id.* ¶ 21. Twitter employs various strategies to control such activities, but the use of automated software can circumvent policing efforts by creating dozens or hundreds of new accounts each day.[3] Twitter alleges such violations of the TOS compromise the quality of user experience, and that it has deployed a variety of measures to detect and combat spam on its platform. *Id.* ¶ 1.

Twitter alleges it has spent at least $75,000 in anti-spam measures to counteract Harris's activities in violation of the TOS, and that it has suffered loss of goodwill and loss of users due to the dissatisfaction with the level of spam. *Id.* ¶ 25. Twitter alleges that at the time of the complaint, Harris operated over 129,000 automated Twitter accounts that use deceptive language to direct Twitter users to his websites that provide "online payment services of questionable legitimacy." *Id.* ¶¶ 55-56. Specifically, Twitter alleges Harris violated the Terms of Service by: (a) spamming users; (b) creating serial accounts for disruptive or abusive purposes; (c) Tweeting misleading links; and (d) posting the same message from multiple accounts. Twitter alleges that these activities have harmed Twitter while financially benefitting Harris. *Id.* ¶ 57. Twitter brings claims for breach of contract, fraud, and unlawful, unfair and fraudulent business practices under California Business & Professions Code § 17200 against Harris. Twitter seeks preliminary and permanent injunctive relief restraining Harris from: (a) creating Twitter accounts for purposes that violate the TOS, including "bot" accounts; (b) accessing or searching

---

[3] Some of the defendants allegedly distribute such software and are referred to as "Spamware Defendants" in Twitter's complaint. Harris is among the alleged "Spammer Defendants" that Twitter believes operate a large number of automated Twitter accounts, but do not distribute the software.

3

Twitter accounts for purposes that violate the TOS; (c) transmitting unsolicited commercial messages via Twitter; (d) engaging in false or misleading advertising; and (e) engaging in any violations of the TOS. Twitter also seeks compensatory, statutory, punitive, and exemplary damages, restitution, and disgorgement of profits, reasonable costs, and attorneys' fees as permitted by law.

**DISCUSSION**

**I.   Subject Matter Jurisdiction**

Harris argues that the Court lacks authority to hear this suit under 28 U.S.C. § 1332(a) (diversity jurisdiction) because the plaintiff has alleged "at least $75,000" in controversy, rather than an amount that "exceeds the sum or value of $75,000, exclusive of interest and costs," as required by the statute. Motion to Dismiss, Dkt. 23, ¶ 1. Further, Harris contends that because contract law is a matter of state law, the claims against him should not be litigated in federal court. Harris also contends that plaintiff's use of the term "spam" does not meet the definition of the CAN-SPAM Act of 2003. *Id.* Twitter responds that the amount in controversy exceeds the jurisdictional minimum because "at least $75,000" refers only to expenses incurred by Twitter in anti-spam measures necessitated by Harris's actions, while the complaint seeks additional compensatory, statutory, punitive, and exemplary damages, as well as restitution and disgorgement of profits to be established in trial. Pl. Opp. to Motion to Dismiss, Dkt. 36 at 2.

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. As the party invoking the jurisdiction of the federal court, the plaintiff bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The Ninth Circuit has held that "[g]enerally, the amount in controversy is determined from the face of the pleadings." *Crum v. Circus Circus Enterprises*, 231 F.3d 1129, 1131 (9th Cir. 2000). To justify dismissal for lack of jurisdictional amount in controversy, "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* The legal certainty standard will result in dismissal only when a rule of law or other limitation of damages on a contract claim would make it virtually impossible for a plaintiff to meet the amount-in-controversy requirement, or when independent

1 facts show that the amount of damages was claimed merely to obtain federal court jurisdiction.
2 *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 364 (9th Cir. 1986). The sum claimed
3 by the plaintiff controls so long as the claim is made in good faith. *See St. Paul Mercury Indem. Co. v.*
4 *Red Cab Co.*, 303 U.S. 283, 289 (1938); *Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473
5 (9th Cir. 1997).

This Court has held that "a defendant challenging the federal court's jurisdiction must establish to a legal certainty that plaintiff's claim does not satisfy the requisite jurisdictional amount." *Richardson v. Servicemaster Global Holdings Inc.*, C 09-4044 SI, 2009 WL 4981149 at * 3 (N.D. Cal. Dec. 15, 2009) (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402 (9th Cir.1996)). The defendant has a "heavy burden of demonstrating to a legal certainty that a claim cannot meet the jurisdictional amount." *BRC Group, LLC v. Quepasa Corp.*, C 09-01506 WHA, 2009 WL 2424669 at *6 (N.D. Cal. Aug. 7, 2009) (citing *McCauley v. Ford Motor Co.*, 264 F.3d 952, 958 (9th Cir.2001)). Further, when the plaintiff seeks equitable relief, the value of the injunction to the plaintiff may meet the statutory minimum. *Gen. Motors Corp. v. Manly Oldsmobile-GMC, Inc.*, C-07-0233 JCS, 2007 WL 776261 at *2 (N.D. Cal. Mar. 12, 2007).

Here, Harris has not met his burden. He has not presented any facts that would support his position that the amount in controversy cannot exceed the jurisdictional minimum. It is only disputed, not implausible, that the amount sought by plaintiff, including the value of the injunctive relief, is over $75,000. Further, it is well-established that a federal district court may hear a breach of contract claim, among other matters of state law, in diversity jurisdiction. *See, e.g.*, *St. Paul Mercury Indem. Co.*, 303 U.S. at 285-86. Finally, the definition of "spam" in the CAN-SPAM Act is irrelevant to the present case because the complaint does not concern that Act but a breach of the TOS contract, which defines "spam" for the purposes of the agreement. Defendant Harris's motion to dismiss for lack of subject matter jurisdiction is, therefore, DENIED.

**II.   Personal Jurisdiction.**

Harris argues the Court has no legal authority to hear the case because the defendant resides in W. Palm Beach, Florida and "has not conducted business in California for over 3 yrs. which predates

5

involvement with the Plaintiff." Motion to Dismiss, Dkt. 23, ¶ 2. Twitter responds that the defendant consented to a forum selection clause when he agreed to Twitter's Terms of Service, which include a "Controlling Law and Jurisdiction" section providing that: "All claims, legal proceedings or litigation arising in connection with the Services will be brought solely in San Francisco County, California, and you consent to the jurisdiction of and venue in such courts and waive any objection as to inconvenient forum." Pl. Opp. to Motion to Dismiss, Dkt. 36 at 4. In addition, Twitter contends that the complaint alleges sufficient facts for the Court to establish specific jurisdiction over the defendant with respect to his activities in connection with the California-based Twitter service and his entering into the TOS agreement.

California permits the exercise of personal jurisdiction to the full extent permitted by due process. *See* Cal. Civ. Code § 410.10. Federal law governs the enforceability of forum selection clauses in diversity actions. *Manetti- Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). Forum selection clauses are prima facie valid and should not be set aside unless the party challenging their enforcement can show that they are unreasonable under the circumstances. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *see also Hendricks v. Bank of America, N.A.*, 408 F.3d 1127, 1137 (9th Cir. 2005). This Court has held that the hardship a defendant may face in traveling to California for litigation does not render the forum selection clause unreasonable when the defendant was aware of the clause and able to negotiate it. *Zenger-Miller, Inc. v. Training Team, GmbH*, 757 F. Supp. 1062, 1069 (N.D. Cal. 1991). Harris does not dispute that he knowingly entered into the TOS agreement and does not argue that he was unaware of the forum selection clause. Moreover, while he contends that forcing him to litigate in California would be "harsh" and "unfair," he has not submitted any evidence regarding his ability to litigate in this forum. The Supreme Court has held that cruise ticket purchasers were bound by a forum selection clause in a standard contract when "conclusory reference to the record provides no basis for this Court to validate the finding of inconvenience." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594 (1991). As in that case, Harris has "not satisfied the 'heavy burden of proof,'

1  [. . .] required to set aside the clause on grounds of inconvenience." *Id.* at 595.[4] In view of the
2  allegations against Harris in the complaint – that he offers "online payment services" and attempts to
3  profit from his alleged Twitter "spam," and that Twitter has spent $75,000 to counteract Harris's
4  activities – and because Harris has not submitted any evidence regarding his ability or inability to
5  litigate in California, the Court finds enforcement of the forum selection clause is not unreasonable.[5]

6  Moreover, the Court finds sufficient grounds for specific jurisdiction over the defendant on the
7  facts alleged. The Supreme Court has held that an act that is both aimed at and has effect in the forum
8  state satisfies the purposeful availment prong of the specific jurisdiction analysis. *Calder v. Jones*, 465
9  U.S. 783, 787 (1984). To meet the effects test, the defendant must have (1) committed an intentional
10 act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is
11 suffered and which the defendant knows is likely to be suffered in the forum state. *See Yahoo! Inc. v.*
12 *La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

13 In *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039 (N.D. Cal. 2010), the Court found
14 that when the plaintiff was headquartered in and maintained its website in California, the defendants'
15 actions in using the web service directly targeted California, and the plaintiff would suffer the brunt of
16 its harm in California. *Id.* at 1053; *see also eBay Inc. v. Digital Point Solutions, Inc.*, 608 F. Supp. 2d
17 1156, 1162 (N.D. Cal. 2009). Here, Harris's conduct in agreeing to the TOS and using Twitter service
18 similarly satisfies the purposeful availment prong. The second requirement for specific jurisdiction is
19 that the contacts constituting purposeful availment must be the ones that give rise to the current suit in
20 terms of "but for" causation. *See Ziegler v. Indian River County*, 64 F.3d 470, 474 (9th Cir.1995). This
21 requirement is met here because the Harris's use of Twitter service is the but for cause of the damages
22 in suit. The final requirement for specific jurisdiction is reasonableness. For jurisdiction to be
23 reasonable, it must comport with fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*,

---

[4] Affidavits of financial or health conditions may establish that the defendant would be deprived of his day in court, and overcome the presumption in favor of the forum selection clause. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1143 (9th Cir. 2004) ("When these assertions are credited as true, Murphy's physical and financial limitations together would preclude his day in court, and the second Bremen exception to enforcing forum selection clauses would apply.").

[5] To be clear, the Court is not finding that forum selection clauses in "clickwrap" agreements are generally enforceable, only that on the allegations in this case, it is not unreasonable to enforce the clause here.

7

1 471 U.S. 462, 476 (1985). The Supreme Court explicitly places upon the defendant the burden of 2 demonstrating unreasonableness and requires the defendant to put on a "compelling case." *Id.* at 3 476-77. The reasonableness determination requires the consideration of the specific factors: (1) the 4 extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant 5 in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) 6 the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the 7 controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, 8 and (7) the existence of an alternative forum. *Id.*

9 As with regard to the forum selection clause, Harris has not made a requisite compelling case 10 demonstrating unreasonableness of exercise of specific jurisdiction by this Court. According to the 11 allegations of the complaint, Harris has knowingly and purposefully entered into agreement with Twitter 12 and used its California-based service to operate over 129,000 automated Twitter accounts using 13 deceptive language to direct Twitter users to his online payment services, from which Harris benefitted 14 financially. The state of California has a justifiable interest in efficiently resolving this dispute and 15 Harris has not demonstrated that defending the case in California would unduly burden him. Defendant 16 Harris's motion to dismiss for lack of personal jurisdiction is, therefore, DENIED.

### III. Improper Venue

19 Harris argues that venue in California would be "harshly unfair" because he lives 3048.4 miles 20 away, and raises the doctrine of *forum non conveniens*, "often used in cases where the events took place 21 in a foreign country." Motion to Dismiss, Dkt. 23, ¶ 3. Twitter responds that defendant consented to 22 venue in this forum by agreeing to the Terms of Service, and has thus waived any objections of 23 inconvenience. Pl. Opp. to Motion to Dismiss, Dkt. 36 at 9.

24 The prevailing rule is clear that "where venue is specified with mandatory language the clause 25 will be enforced." *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989). As noted 26 above, forum selection clauses are presumptively valid and "the party seeking to avoid a forum selection 27 clause bears a 'heavy burden' to establish a ground upon which [the court] will conclude the clause is 28 unenforceable." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009) (quoting *M/S Bremen v.*

*Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972)). A forum selection clause is unenforceable only if "enforcement would be 'unreasonable' under the circumstances." *Hendricks v. Bank of America*, *N.A.*, 408 F.3d 1127, 1137 (9th Cir.2005). A forum selection clause is unreasonable if "(1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought." *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir.1996) (internal citations omitted). Harris does not argue that enforcement of the forum selection clause would be improper because it is the result of fraud or that enforcement of the clause would contravene a strong public policy. Moreover, as discussed above, Harris's conclusory claim of inconvenience is generally insufficient to show that enforcement of the forum selection clause would be so gravely difficult as to deprive him of his day in court. Therefore, on the facts of this case, the presumption in favor of the forum clause stands.

In addition, venue is proper in a "district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Twitter has sufficiently alleged that the defendant entered into a contract with a corporation headquartered in this district and that the plaintiff's business and goodwill suffered harm in this district. Further, unless the balance of fairness weighs heavily in favor of the defendant, "the plaintiff's choice of forum should rarely be disturbed." *Natural Wellness Centers of Am., Inc. v. J.R. Andorin Inc.*, 11-04642 EDL, 2012 WL 216578 at *10 (N.D. Cal. Jan. 24, 2012) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1986) ("defendant must make a strong showing ... to warrant upsetting the plaintiff's choice of forum")). As in the analysis of personal jurisdiction above, in light of the allegations that Harris violated Twitter TOS by using 129,000 automated accounts to direct Twitter users to his online payment services, and because Harris has failed to submit any evidence to support his assertion of an unfair burden in litigating in this forum, the Court finds that venue in this district is proper.

9

### IV. Insufficient Process & Insufficient Service of Process

Harris argues that the summons he received does not bear the seal of the Court as required by Fed. R. Civ. P. 4(a)(1)(G). Harris also contends that "the plaintiff did not prepare the summons correctly or did not correctly serve the defendant." Motion to Dismiss, Dkt. 23, ¶ 4. Twitter responds that the seal is visible in the summons (Dkt. 3 at 2) and that it complies with the Rule 4 requirements. Twitter also notes that the return of service on Harris, executed by the process server under penalty of perjury, shows that defendant was served with summons and a copy of the complaint on April 12, 2012 (Dkt. 10).

This Court has long held that "[d]ismissals for defects in the form of summons are generally disfavored. Such defects are considered 'technical' and hence are not a ground for dismissal unless the defendant demonstrates actual prejudice." *U.S.A. Nutrasource, Inc. v. CNA Ins. Co.*, 140 F. Supp. 2d 1049, 1052-53 (N.D. Cal. 2001) (quoting *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir.1994); *see also United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir.1984) ("Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint."). The Court agrees with Twitter that the conclusory assertions made by Harris are insufficient to challenge the presumption "that a signed return of service constitutes prima facie evidence of valid service." *S.E.C. v. Internet Solutions for Bus. Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007); *see also Freeman v. ABC Legal Services Inc.,* 827 F. Supp. 2d 1065 (N.D. Cal. 2011) ("The burden of producing strong and convincing evidence to rebut this presumption cannot be met by a mere conclusory denial of service.").

### V. Failure to State a Claim

Harris contends that Twitter has failed to state a claim for breach of contract, and that "even if everything in the complaint is true, the defendant did not violate the law." Motion to Dismiss, Dkt. 23, ¶ 5.[6] Specifically, Harris argues that the Twitter Terms of Service provide for no cause of action for the violation of the TOS beyond the suspension of the user account. Twitter responds that the TOS does

---

[6] Harris does not challenge the sufficiency of the other two claims asserted against him: fraud and unlawful, unfair and fraudulent business practices under Cal. Bus. & Prof. Code § 17200.

10

not limit Twitter in pursuing other claims, and that Cal. Civ. Code § 3300 provides for monetary damages for the breach of contract.

To state a claim for breach of contract under California law, plaintiff must plead facts establishing the following elements: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *Assurance Indus. Co., Inc. v. Snag, Inc.*, C 10-1718 SBA, 2010 WL 4055925 (N.D. Cal. Oct. 14, 2010). Twitter has alleged all elements of a breach of contract claim: (1) the existence and content of the Terms of Service; (2) plaintiff's performance of contract obligations (Comp. ¶ 60); (3) defendant's breach of contract by engaging in prohibited activities (Comp. ¶¶ 55-57); and (4) resulting damages (Comp. ¶62). *See also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1059 (N.D. Cal. 2010) (finding that plaintiff stated a claim for breach of contract based on a violation of Terms of Use agreement). The Court finds that as a pleading matter, plaintiff has sufficiently alleged a claim for breach of contract.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant Harris's motion to dismiss.

**IT IS SO ORDERED.**

Dated: June 22, 2012

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE

11